```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

MARVIN THRASH,                  :       NO. 1:11-CV-00915
                                :
    Plaintiff,                  :
                                :
  v.                            :       **OPINION AND ORDER**
                                :
MIAMI UNIVERSITY, et al.,       :
                                :
    Defendants.                 :

This matter is before the Court on Defendants' Motion for Summary Judgment (doc. 13), Plaintiff's Response in Opposition (doc. 25), and Defendants' Reply (doc. 30). For the reasons indicated herein, the Court GRANTS Defendants' Motion for Summary Judgment.

**I.   Background**

In 2004, Defendant Miami University ("Miami") sought a tenure-track assistant professor for its department of paper sciences and engineering, and considered some fifty-eight applications (doc. 25). Miami chose Lei Kerr as its first pick, and further hired Plaintiff Dr. Martin Thrash as an "opportunity hire," that is, pursuant to a policy that created a financial incentive for academic divisions to increase the number of under-represented minorities among the faculty (Id.). Dr. Shashi Lalvani, chairperson of the department, accepted the recommendation of the hiring committee, offered Plaintiff a tenure-track position, and advised Plaintiff that if he completed the required six-year

probationary period, he would be eligible for consideration for tenure during the 2010-2011 academic year (Id.). In order to gain tenure, faculty members are evaluated annually as to their 1) teaching, 2) research, 3) service, and 4) collegiality (Id.). The evaluation is conducted by a tenure committee, who in turn submits its findings to the department chairperson, who conducts his or her own evaluation that is ultimately forwarded to the Dean (Id.). During the third, fourth, and fifth years the evaluation becomes more of an assessment and involves an extensive review by the Dean (Id.).

Plaintiff ultimately did not obtain tenure, and his employment ended on May 6, 2012. Plaintiff contends Dr. Lalvani worked against his eligibility for tenure, critiquing Plaintiff's research and refusing to consider outside evaluators from historically black colleges and universities (doc. 25). Plaintiff brought this lawsuit raising claims for racial discrimination pursuant to Title VII and Sections 1981 and 1983. Defendants deny racial discrimination and contend that Plaintiff was evaluated fairly by some twenty-five faculty members, and Plaintiff's research simply did not meet the university's standards (docs. 13, 30). Defendants contend Plaintiff cannot show such reason to be pretextual, and therefore, move for summary judgment (Id.). Plaintiff submitted his response in opposition (doc. 25), and Defendants their reply such that this matter is ripe for the

Court's consideration.

**II. Applicable Legal Standard**

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-

4

movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh

evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

**III. Analysis**

Defendants assume that if Plaintiff, as a member of a protected class, can establish a prima facie case of racial discrimination, under McDonnell Douglas,[1] they need to articulate a legitimate nondiscriminatory reason for denial of promotion and tenure. They proffer as their reason that Plaintiff's research simply did not meet the university's standards. The burden shifts back to Plaintiff, therefore, to demonstrate that such reason is pretext for unlawful discrimination. Plaintiff can do so by demonstrating "1) that the proffered reasons had no basis in fact, 2) that the proffered reasons did not actually motivate his discharge; or 3) that they were insufficient to motivate

---

[1] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The same analysis applies to Plaintiff's Section 1981 and 1983 claims. Canady v. Klaiber, 2007 U.S. Dist. LEXIS 1419, at *18 (N.D. Ohio 2007).

6

discharge." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994).  Because after a review of the record the Court concludes no reasonable jury could find pretext in Defendants' proffered reason, Defendants are entitled to summary judgment on Plaintiff's claims for racial discrimination.

Defendants' motion for summary judgment demonstrates an extensive review process involving numerous individuals who considered Plaintiff's candidacy for tenure (doc. 13).  Plaintiff obtained six reviews from faculty at outside universities: several were positive, several were lukewarm, and several were negative (Id.).  There is no dispute that in October 2010 the tenure committee at Miami found Plaintiff's application "a very marginal case" that "could go either way, and all the members had reservations (Id.).  Chairperson Lalvani, who initially recommended that Plaintiff be hired, concluded as to Plaintiff's research: "I cannot assign a high quality ranking in this category. Similarly, the prospects of high quality research are also not high, in my opinion.  This is based upon Dr. Thrash's lack of establishment of a robust research program at Miami" (Id.).

The next step of the process was review by Dean Marek Dollár.  The Dean reviewed feedback from the school of engineering and applied sciences ("SEAS") promotion and tenure advisory committee, which raised concerns about the quality of Plaintiff's application (Id.).  The Dean reviewed Plaintiff's dossier, the

7

external reference letters, department committee and Lalvani's recommendation, Plaintiff's request for reconsideration of Lalvani's recommendation, Lalvani's response, and Plaintiff's second through fifth year evaluations (Id.). The Dean found Plaintiff's research insufficient, and upon Plaintiff's request for reconsideration again reviewed the record, concluding the second review "reaffirmed my conviction that your publication record is not strong enough to justify my positive recommendation" (Id.).

The next step of the process involved the thirteen members of the university promotion and tenure committee (Id.). This committee examined the record as a whole and declined to recommend Plaintiff for tenure (Id). The committee critiqued the quality of Plaintiff's research, found insufficient published research in peer-reviewed journals, found the outside reviews mixed at best, and noted that Plaintiff had been urged in his annual evaluations to develop a strong record of publication (Id.). The committee noted, however, that Plaintiff's record in the areas of teaching, advising, service and collegiality passed muster (Id.).

Plaintiff sought reconsideration which the committee granted. It again concluded that Plaintiff's application "had not met the criteria for tenure or promotion in the area of research, scholarship and creative work" (Id.).

Plaintiff contends that Dr. Lalvani "poisoned the well" such that his application did not have a chance in the review

8

process.  Plaintiff contends Lalvani did not permit him to use all of the outside evaluators of his choice, although the record shows choice of external reviewers is within the province of the chair and the Dean.  The record further shows Lalvani accepted without question three African or African-American reviewers proposed by Plaintiff, Lalvani rejected three reviewers from non-historically black colleges and universities for lack of qualification to review, and agreed not to use a reviewer that Plaintiff contended was biased.  There is no dispute that the Dean conducted a review independent of Lalvani, as did the thirteen-member tenure committee.  Under these circumstances no reasonable jury could find merit to Plaintiff's "cat's paw" theory that Lalvani's alleged animus caused the ultimate decision.  Indeed, the Court agrees that Lalvani's decision was supported by evidence, and that Lalvani is entitled to qualified immunity because there is no genuine issue of material fact as to whether Lalvani violated a constitutional right.  Lalvani did not.

Finally, although Plaintiff contends he is as or more qualified than two Caucasion professors who were granted tenure, Defendants proffer evidence that both had far more significant research published and obtained grants that dwarfed Plaintiff's contribution to the university.  The Court again concludes that no reasonable jury would find Defendants' decision to refuse Plaintiff tenure was based on race, but rather it was based on Plaintiff's

9

overall record, which was subjected to an extensive review.

**IV. Conclusion**

Having reviewed this matter, the Court finds Defendants' motion for summary judgment well-taken. Although Plaintiff demonstrated talent as an instructor in the areas of teaching, advising, service and collegiality, the record shows Defendants had a legitimate non-discriminatory reason for the decision not to grant tenure. Plaintiff has not raised a genuine issue of material fact as to his research, such that a reasonable jury could find Defendants' reason was mere pretext for discrimination.

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment (doc. 13), and further FINDS Dr. Shashi Lalvani entitled to qualified immunity.

SO ORDERED.


Dated: April 9, 2013        s/S. Arthur Spiegel
                            S. Arthur Spiegel
                            United States Senior District Judge